STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| In re: Binkhorst Lake Access | } | Docket No. 286-12-07 Vtec |
| (Appeal of Wool) | } | |

Decision and Order on Motions for Summary Judgment

Appellants Michael and Martha Wool appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Charlotte, upholding the Zoning Administrator's determination that certain work performed on Appellee Mark Binkhorst's property was "exempt from permitting." Appellants are represented by Hobart F. Popick, Esq.; Appellee is represented by Stuart M. Bennett, Esq.; and the Town is represented by William E. Flender, Esq.

The parties have each have moved for summary judgment. The following facts are undisputed unless otherwise noted.

Hills Point Road extends northwards from Lake Road in the Town of Charlotte, dividing a group of twenty small lakeshore lots from a large inland lot, which also has access directly onto Lake Road and the address of 1148 Lake Road. Appellee's 55.9-acre property consists of the large inland lot of approximately 55.2 acres, and a narrow unimproved lakeshore lot of approximately 0.7 acres, providing access to Lake Champlain. The 0.7-acre lakeshore lot, also known as the "Windmill Lot," is located in the Shoreland zoning district, some portion of the remainder of Appellee's property is located in the Rural zoning district. The large inland lot is or has recently been in agricultural use.

1

Appellants own a 1.01-acre lakeshore lot at 131 Hills Point Road, which they use as their primary residence. Lake Champlain is their primary water source for drinking and household use, and Appellants also use Lake Champlain for recreation. Appellants' lot is located to the south of the Windmill Lot, separated from it by two other small lakeshore lots.

The Windmill Lot is a narrow strip of land, approximately 350 feet in length, running from Hills Point Road west to Lake Champlain. The property gradually widens from approximately 50 feet in width at Hills Point Road to approximately 100 feet in width at Lake Champlain. A pump house for a water supply system is located near the lake on the Windmill Lot; this water supply system does not serve Appellant's or Appellee's properties,[1] but does serve adjacent properties that are not at issue in this appeal. The Windmill Lot is also burdened by a right-of-way that allows those served by the water supply system to access the pump house.

Electrical service to power the pump runs down to the pump house from an electrical meter at Hills Point Road. The electrical wire had been located underground when Appellee purchased the property in 1996, but, by 2006, the wire had surfaced and had become a hazard. In 2006, Appellee contracted to have a trench dug from the pump house to the meter to bury the wire in conduit along the north side of the Windmill Lot. Appellee contacted the Zoning Administrator, who informed him that a permit was not required to dig the trench and bury the wire. However, issues as to the integrity of the electrical system arose and the wire was not in fact buried, leaving the trench open and exposed through the winter of 2006–07.

An existing Town culvert runs under Hills Point Road, draining water from Appellee's larger 55.2-acre parcel onto the Windmill Lot. During the winter and spring of 2006–07, the open trench on the Windmill Lot created a channel for surface water to

---

[1] Appellee states that he has the right to use this water system but does not do so at this time.

flow from this culvert towards the pump house, causing the pump house to flood, and causing water to infiltrate the basement of the house immediately to the south of the Windmill Lot.

In the summer of 2007, Appellee again approached the zoning administrator to determine if a permit was required to perform certain work on the Windmill Lot. In addition to burying the new electrical conduit to serve the pump house, Appellee wished to address the issues resulting from the water draining onto the property through the Town's culvert. Appellee also inquired about improving vehicular access over the property from Hills Point Road and installing landscaping.

After the Town Road Commissioner conducted a site visit and reported to the Zoning Administrator, the Zoning Administrator and Appellee discussed options for addressing the issues created by the water draining across the road through the existing Town culvert. They determined that a new culvert would be installed running the length of the Windmill Lot, from the point at which the water emerged from the existing Town culvert to a point near the lake shore. Water exiting the Town culvert would travel through this new culvert, then across a course of rip rap, to discharge into Lake Champlain. The Zoning Administrator informed Appellee that a permit was not required for installation of the culvert or for any of the other work he proposed regarding the electrical conduit, the vehicular access, or the landscaping.

Appellee began the work at issue in July 2007. Installing the culvert included at least the following actions: digging a trench, placing and burying the culvert in the trench, regrading the area, and installing a course of rip rap at the west end of the new culvert. In the course of the work performed on the property, a number of trees were removed from the Windmill Lot; Appellee's affidavit states that all the trees that were removed were beyond 100 feet from the shoreline. Appellee also installed landscaping and added some fill in connection with work on the access from Hills Point Road onto the property. Material facts are in dispute concerning the scope of the work on the

3

trench for the culvert, as well as the scope of additional work performed on the vehicular access, the change in its route, and the extent to which that access was previously in existence. Material facts are also in dispute as to whether the work done on the property amounted to the construction of a retaining wall.

A meeting was convened on August 7, 2007, to discuss Appellants' concerns about the work and whether it required a permit; Appellants, Appellee, the Zoning Administrator, the Road Commissioner, and several other neighbors or interested parties attended the meeting. On August 8, 2007, the Zoning Administrator sent a letter to Appellee, with copies to those who had attended the previous day's meeting, stating:

> The work you have undertaken and propose to soon complete constitutes normal maintenance and repair, minor grading and excavation[,] and landscaping as described in Chapter IX, [§] 9.2 of the Town of Charlotte Land Use Regulations and is therefore exempt from permitting. No approval from the Town of Charlotte for completion of this work is required.

Appellee had stopped work some time prior to the meeting and began again after receipt of the letter, including completing the burial of the electrical conduit from the road to the pump house, replacing the electrical pedestal at the road, and installing more landscaping. Appellants appealed the Zoning Administrator's determination letter to the ZBA, which also upheld the determination, and this appeal followed.

Under § 1.3(C) of the Town of Charlotte Land Use Regulations (Regulations), all land development must either be specifically authorized by the Regulations, exempted under state statute or § 9.2,[2] or approved in accordance with § 2.3. The term "land development" is defined to include "any . . . excavation or landfill involving more than 300 cubic yards of material," as well as "any change in the use of . . . land or extension

---

[2] All citations to section numbers are references to sections of the Town of Charlotte Land Use Regulations unless otherwise noted.

4

of use of land," and the "installation of infrastructure or improvements including but not limited to roads, utilities, drainage, wastewater or water." § 10.2.

Facts may be in dispute as to how much material was excavated or filled on the Windmill Lot in the course of the work performed, but the parties do not dispute that at least some of the work performed on the Windmill Lot consisted of "installation of infrastructure or improvements," at least for utilities and drainage. The parties do not dispute that the work constituted "land development" under the Regulations, resolving Question 1 of the Statement of Questions. The work must therefore either qualify as exempt under § 9.2 or be approved under § 2.3.

Section 9.2(A) lists activities which are exempt generally from the Regulations and do not require a zoning permit or other approval. The exemptions which are pertinent to this appeal are:

> (1) The normal maintenance and repair of existing structures, utilities and infrastructure which does not result in any change to the footprint or height of a building . . . or a change in use. . . .
> .   .   .
> (4) Minor grading and excavation associated with normal road, driveway, and parking area maintenance (including ditching, culvert replacement and resurfacing)[.] This does not include site grading or excavation in preparation for the construction of a road, major infrastructure, or a structure.
> (5) Landscaping, for example: installation of plants, soils, arbors, terraces, and patios.

However, within the Shoreland zoning district, certain work is subject to more specific approval requirements that apply despite the general exemptions provided in § 9.2. See In re Curtis, 2006 VT 9, ¶¶ 6, 8, 179 Vt. 620 (mem.) (citing State v. Teachout, 142 Vt. 69, 73 (1982)) (giving effect to more specific provision of zoning ordinance over more general provision that could apply to the same activity). These more specific approval requirements relate to shoreline improvements, which require conditional use

approval under § 5.4, and relate to work within one hundred feet of the shoreline of Lake Champlain, regulated under § 3.15(G).

The uses which are allowed in the Shoreland zoning district are specified in Table 2.6 of the Regulations. "Shoreline improvements" are designated as a conditional use, requiring approval from the ZBA under § 5.4. Section 10.2 defines "shoreline improvement" as:

> Physical improvements located at or above the mean high water mark within the shoreline area which are intended to provide access to public waters or to prevent shoreline erosion, including permanent docks, stairways, and fishing piers; boat hoists, boat houses, launches and ramps; manmade or improved beach areas; and retaining walls or other permanent stabilization measures.

Table 2.6(F)(6) exempts shoreline improvements from the minimum shoreline setback, but requires that shoreline improvements "shall be sited and designed to avoid wetlands, designated wildlife habitat, and other sensitive shoreline features; shall minimize surface runoff, channeling, and soil erosion; and shall avoid adverse impacts and obstructions to adjoining shoreline areas." Shoreline improvements must meet the standards in Table 2.6(F)(6) as well as the standards for conditional use approval in § 5.4.

Accordingly, if any of the work completed by Appellee within the shoreline area meets the definition of "shoreline improvement" in § 10.2, Appellee must apply to the ZBA for conditional use approval of that work, which must comply with the requirements of Table 2.6(F)(6) and § 5.4. Material facts are in dispute, or at least have not been provided to the Court, to determine if any of the work completed by Appellee constitutes shoreline improvements. All that is before the Court in the present appeal is the Zoning Administrator's determination that the work was exempt; if the material facts reveal that some of the work qualified as "shoreline improvements," the conditional use application would have to be made to and ruled on by the ZBA in the

first instance; it would not be before this Court in this appeal.  In re Torres, 154 Vt. 233, 235–36 (1990); In re Spurr Self Storage Unit Construction Application, No. 224-10-07 Vtec, slip op. at 2 (Vt. Envtl. Ct. Aug. 7, 2008) (Wright, J.).

Section § 3.15(G) requires a vegetated buffer zone to be maintained within 100 feet of the shoreline of Lake Champlain, "in order to minimize runoff and pollution, and to maintain bank stability and environmental quality."  § 3.15(G).  Within 100 feet of the shoreline, § 3.15(G) requires that:

> (1) There shall be no cutting or removal of trees or shrubs except with administrative review and approval by the Zoning Administrator; such review will determine whether the proposed cutting or removal is in conformance with an approved wildlife habitat plan or shoreland management plan.
>
> (2) Limited pruning of branches of trees and shrubs is allowed to maintain cleared openings or views legally in existence as of the effective date of these regulations.  Such openings or views shall not be enlarged except as allowed herein.
>
> (3) Nothing in this section shall prohibit the cutting and removal of storm-damaged, diseased or dead trees which pose a hazard as determined by the Zoning Administrator.
>
> (4) There shall be no dredging, draining or filling of land along the shoreline, or in wetland areas, and no cutting or removal of wetland vegetation shall be permitted, except in conformance with a shoreland management plan approved by the [ZBA].

Accordingly, if any of the work completed by Appellee within 100 feet of the shoreline constituted the removal or cutting of trees or shrubs, such activity requires administrative review and approval of the Zoning Administrator to determine its compliance with § 3.15(G)(1) and (3).[3]  Similarly, if any of the work completed by Appellee within 100 feet of the shoreline constituted the dredging, draining, or filling of

---

[3]  Paragraph 2(a) of the Zoning Administrator's affidavit is unclear as to whether he had told Appellee that the landscaping was exempt under § 9.2(5) or whether he had approved the activity under § 3.15(G)(1) and (3).  If the latter, he does not appear to have issued the decision in writing, so that 24 V.S.A. § 4472(d) does not preclude raising the issue in the present appeal.

7

land along the shoreline or in wetland areas, or constituted the cutting or removal of wetland vegetation, such activity requires the approval of a shoreland management plan by the ZBA, in order to determine whether it complies with § 3.15(G)(4). Material facts are in dispute, or at least have not been provided to the Court, to determine if any of the work completed by Appellee falls within the provisions of § 3.15(G). All that is before the Court in the present appeal is the Zoning Administrator's determination that the work was exempt; if the material facts reveal that some of the work required approval under § 3.15(G), such applications would have to be ruled on by the Zoning Administrator and appealed to and ruled on by the ZBA, before they could be appealed to this Court.

For work conducted on the Windmill Lot that does not constitute shoreline improvement and did not occur within the one-hundred-foot vegetated buffer, the § 9.2 exemptions from permitting may apply. However, material facts are in dispute, or at least have not been provided to the Court, concerning the scope, nature, and location of this work, from which the Court could determine what work was done, and whether that work falls within the exemption language. Specifically, material facts are in dispute as to the scope of the landscaping and excavation which occurred on the Windmill Lot; whether a vehicular access from Hills Point Road to the lake existed before the work at issue in this appeal; whether the electrical work performed on the pump house constituted "normal maintenance and repair" of an existing structure, utility, or infrastructure; as well as the issues discussed above as to whether any of these activities constituted shoreline improvements or occurred within the one-hundred foot vegetated buffer zone.

Accordingly, as material facts remain in dispute, as discussed above, Appellants' Motion for Summary Judgment is DENIED. However, it is not clear whether the disputed facts require a trial. A telephone conference therefore has been scheduled (see enclosed notice).

Done at Berlin, Vermont, this 9th day of March, 2009.


_____
Merideth Wright
Environmental Judge